FILED - USDC - FLMD - FTM
OCT 2 2024 PM5:45

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v. CASE NO. 2:24-cr- 143 - SPC - KCO

THAKUR SUKHDEO

18 U.S.C. § 1343
(Wire Fraud)
18 U.S.C. § 1957
(Illegal Monetary Transactions)

**INDICTMENT**

The Grand Jury charges:

**COUNTS ONE AND TWO**
**(Wire Fraud)**

**A. Introduction**

At times relevant to this Indictment:

1. THAKUR SUKHDEO, a resident of the Middle District of Florida, was an owner of J.R. HANDYMAN PRO's LLC, a business formed in the State of Florida.

The Small Business Administration

2. The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provided support to entrepreneurs and small businesses.

3. In or around March 2020, the President declared the ongoing Coronavirus Disease 2019 ("COVID-19") pandemic of sufficient severity and

magnitude to warrant an emergency declaration for all states, tribes, territories, and the District of Columbia pursuant to section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. § 5121-5207. The President also signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act and the Families First Coronavirus Response Act.

4. The SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees. In addition to traditional SBA funding programs, the CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 pandemic.

The Economic Injury Disaster Loan Program

5. One source of relief provided by the CARES Act was the expansion of an existing disaster-related program, the Economic Injury Disaster Loan ("EIDL") Program. The EIDL Program was an SBA program designed to provide economic relief to eligible small businesses that were experiencing substantial financial disruption due to the COVID-19 pandemic. Through the EIDL Program, the CARES Act authorized the SBA to provide working capital in the form of low interest, long-term loans.

6. To obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operation, such as the number of employees and gross revenue for the 12-month period preceding the date of the disaster (January 31, 2020). Applicants electronically certified that the

information provided was accurate and were warned that any false statement or misrepresentation to the SBA or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

7. EIDL applications were submitted directly to the SBA. The amount of the loan was determined, in part, on the information provided by the application, including information about gross revenues, as described above. Once approved, and before EIDL funds were issued, EIDL applicants were required to complete loan agreements with the SBA.

8. EIDL funds were issued directly from the United States Treasury. EIDL funds could be used for working capital to pay fixed debts, payroll, accounts payable, and other necessary business obligations that could not be met as a direct result of the disaster.

Bank Accounts Controlled by the Defendant

9. Credit Union 1 was a federal-insured credit union that was insured by the National Credit Union Administration ("NCUA").

10. SUKHDEO controlled and maintained the following financial accounts at Credit Union 1.

a. A personal checking account ending in -53-0050 in the name of "Thakur Sukhdeo" ("Credit Union 1 account ending in -53-0050"), with SUKHDEO as a sole signatory.

b. A business checking account ending in -72-0050 in the name of "J.R. Handyman Pro's LLC" ("Credit Union 1 account ending in -72-0050"), with SUKHDEO as a sole signatory.

### B. The Scheme and Artifice

11. Beginning in or around July 2021, and continuing through the present, in the Middle District of Florida and elsewhere, the defendant,

THAKUR SUKHDEO,

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises about a material fact.

### C. Manner and Means of the Scheme and Artifice

12. The manner and means by which the defendant sought to accomplish the scheme and artifice included, among others, the following:

a. It was part of the scheme and artifice to defraud that SUKHDEO would and did prepare and submit, and cause to be prepared and submitted an EIDL application to the SBA, which was a program tailored to provide benefits and relief to businesses negatively impacted by the COVID-19 pandemic.

b. It was further part of the scheme and artifice to defraud that SUKHDEO would and did submit, and cause to be submitted, a reconsideration request to the SBA after his initial EIDL application was denied.

c. It was further part of the scheme and artifice to defraud that SUKHDEO would and did electronically sign and submit, and cause to be

electronically signed and submitted, various EIDL documents, to include the Loan Authorization and Agreement and Security Agreement, to the SBA.

d. It was further part of the scheme and artifice to defraud that SUKHDEO would and did make and cause to be made materially false and fraudulent representations to the SBA in EIDL loan documents, including false and fraudulent representations about the applicant's use of EIDL funds.

e. It was further part of the scheme and artifice to defraud that SUKHDEO's materially false, fraudulent, and misleading representations would and did cause the SBA to approve an EIDL application and cause to be transmitted $413,900 in EIDL proceeds via an electronic funds transfer to the Credit Union 1 account ending in -53-0050.

f. It was further part of the scheme and artifice to defraud that SUKHDEO would and did use EIDL funds, and cause EIDL funds to be used, for unauthorized purposes and for his own personal enrichment and the enrichment of others, including the purchase of a 2018 Jaguar F-Pace sports utility vehicle and a 2020 GMC Sierra 3500 HD truck.

g. It was further part of the scheme and artifice to defraud that SUKHDEO would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the acts performed in furtherance of the scheme to defraud.

**D. <u>Execution of the Scheme and Artifice</u>**

13. On or about the dates set forth below, in the Middle District of Florida

and elsewhere, the defendant,

THAKUR SUKHDEO,

for the purpose of executing the aforesaid scheme and artifice, knowingly and intentionally transmitted and caused to be transmitted by means of wire communication in interstate and foreign commerce the writings, signs, signals, pictures, and sounds described below, each transmission constituting a separate count:

| COUNT | DATE OF WIRE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| ONE | March 17, 2022 | Electronic submission of EIDL Loan Agreement, Note, Security Agreement and other related documents to the SBA |
| TWO | March 24, 2022 | Electronic funds transfer in the amount of $413,900 in EIDL funds sent from outside of Florida to the Credit Union 1 account ending in -53-0050 within the Middle District of Florida |

All in violation of 18 U.S.C. §§ 1343 and 2.

**COUNTS THREE AND FOUR**
**(Illegal Monetary Transactions)**

**A. Introduction**

1. The Grand Jury hereby realleges Paragraphs 1 through 12a-12g of Counts One through Two of this Indictment and incorporates such paragraphs by this reference as though fully set forth herein.

**B. Offense**

2. On or about the dates listed below, in the Middle District of Florida and elsewhere, the defendant,

THAKUR SUKHDEO,

did knowingly engage and attempt to engage in the monetary transactions described below, in and affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, which property was, in fact, derived from a specified unlawful activity, namely, wire fraud, in violation of 18 U.S.C. § 1343, specifically:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| **THREE** | April 12, 2022 | $68,984.61 cashier's check from the Credit Union account ending in -72-0050 issued to Jaguar Land Rover of Fort Myers for the purchase of a 2018 Jaguar F-Pace sports utility vehicle |
| **FOUR** | April 21, 2022 | $93,994.42 wire transfer from the Credit Union account ending in -72-0050 to Lorenzo Buick GMC for the purchase of a 2020 GMC Sierra 3500 HD truck |

All in violation of 18 U.S.C. §§ 1957 and 2.

**FORFEITURE**

1. The allegations contained in Counts One through Four are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(a)(1), and 28 U.S.C. § 2461(c).

2. Upon conviction of a violation of 18 U.S.C. § 1343, the defendant,

THAKUR SUKHDEO,

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. Upon conviction of a violation of 18 U.S.C. § 1957, the defendant,

THAKUR SUKHDEO,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4. The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of approximately $414,000, which represents the proceeds obtained from the offenses as well as the amount involved in the offenses, as well as a 2018 Jaguar F-Pace with Vehicle Identification Number SADCM2FV2JA328388 and a 2020 GMC Sierra 3500 HD with Vehicle Identification Number 1GT49WEYXLF349435, which were purchased with proceeds obtained from the offenses.

5. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c).

A TRUE BILL,

[redacted]

Foreperson

ROGER B. HANDBERG
United States Attorney

By: ______________________
Trenton J. Reichling
Assistant United States Attorney

By: ______________________
Jesus M. Casas
Assistant United States Attorney
Chief, Fort Myers Division

FORM OBD-34
APR 1991

No. 2:24-cr-

**UNITED STATES DISTRICT COURT**
Middle District of Florida
Fort Myers Division

THE UNITED STATES OF AMERICA

vs.

THAKUR SUKHDEO

# INDICTMENT

Violations:
18 U.S.C. §§ 1343, 1957, 2

A true bill,

[redacted]

Filed in open court this 2nd day

of October, 2024.

Courtney Ward
Clerk

Bail $____________________